# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UL LLC, <br><br> Plaintiff, <br><br> v. <br><br> Sturgeon Services International, Inc., a California corporation, Engineered Well Service International, Inc., a California corporation, John Powell, an individual, and John Does 1-20, individuals, <br><br> Defendants. <br><br> AND RELATED CROSS-CLAIMS AND THIRD-PARTY CLAIMS | Case No.: 1:16−CV−01389−TLN−SAB <br><br> **STIPULATED CONSENT DECREE AND PERMANENT INJUNCTION AS BETWEEN PLAINTIFF UL LLC AND DEFENDANTS STURGEON SERVICES INTERNATIONAL, INC. AND ENGINEERED WELL SERVICE INTERNATIONAL, INC.** |

Plaintiff UL LLC ("UL"), and Defendants Sturgeon Services International, Inc. ("Sturgeon") and Engineered Well Service International, Inc. ("EWS") (Sturgeon and EWS together referred to as "Defendants"), through their respective counsel of record, have agreed to enter into a stipulated Consent Decree and Permanent Injunction in conjunction with their Settlement Agreement.

This order is made with reference to the following facts, which the Defendants admit:

(a) UL is the owner of the famous UL-in-a-circle certification mark, and variations thereof, in the United States and abroad, including UL® (stylized) (Reg. No. 782,589), UL® (stylized) (Reg. No. 2,391,140), and UL® (Reg. No. 4,201,014), among other trademark registrations (collectively, the "UL Marks"). The UL Marks are valid, famous, incontestable, and enforceable.

(b) Sturgeon and EWS need flame retardant clothing for their line of work. Beginning in at least 2012, Sturgeon and EWS began investigating purchasing flame retardant clothing from John Powell's girlfriend, Rebecca Rynders (aka Rebecca Zhu) and her company Zimpex Inc. (collectively, "Rebecca Rynders"). At that time, John Powell was CEO of both Sturgeon and EWS and an owner of EWS. John Powell directed Sturgeon and EWS employees to purchase flame retardant clothing from Rebecca Rynders. John Powell knew that Rebecca Rynders had never imported or sold flame retardant garments before. Sturgeon, EWS and John Powell knew that such clothing needs to comply with NFPA 2112, the safety standard that governs flame retardant uniforms.

(c) In January 2014, a laundry vendor provided a written report pointing out that the garments provided by Rebecca Rynders did not comply with NFPA 2112, and were not certified by a testing company, such as UL. The Sturgeon and EWS employees who received this report shared it with John Powell. Despite the problems detailed in the report from the laundry vendor, John Powell directed Sturgeon and EWS employees to continue purchasing flame retardant uniforms from Rebecca Rynders.

(d) In or around March of 2014, Rebecca Rynders provided Sturgeon and EWS what she claimed was a certificate proving that her products were UL-certified. Chad Givens,

1
ORDER FOR ENTRY OF CONSENT DECREE AND PERMANENT INJUNCTION

an employee of Sturgeon and EWS, compared the certificate to the information in UL's online product certification directory, and noticed that the certificate Rebecca Rynders had provided appeared to list an entirely different manufacturer than the one listed in UL's online directory. Chad Givens informed John Powell that the UL certificate provided by Rynders did not match the information on UL's online product certification directory, and that he had doubts about whether the garments had been tested and certified by UL.

(e) In or around March of 2014, John Powell nevertheless directed Sturgeon and EWS to purchase approximately $70,000 worth of Zimpex products. When these products arrived, these products had labels which claimed that the products had been certified by UL as complying with NFPA 2112. But the product labels had obvious misspellings, such as the phrase "FLAM RETARDANT" instead of "FLAME RETARDANT." The labels also listed Zimpex Inc. as the manufacturer. Danielle Broussard, an employee of EWS, noticed that Zimpex was not listed in UL's online certification directory, and brought this to the attention of John Powell. At the direction of John Powell, EWS distributed these garments to EWS employees. Then, in or around June 2014, John Powell directed Sturgeon and EWS to make another purchase from Rebecca Rynders, totaling over $300,000. In or about November 2014, John Powell directed Sturgeon to purchase an additional $30,000 worth of purported flame resistant products from Rebecca Rynders. All of these products purchased in 2014 listed Zimpex Inc. as the manufacturer and had labels which claimed that the products had been certified by UL. Sturgeon and EWS distributed some of these products to Sturgeon and EWS employees. Sturgeon recoverd almost all of these products once it was advised by UL that the UL marks were counterfeit and conducted an investigation.

The parties have entered into a settlement agreement, and as part of that settlement agreement have stipulated to this Consent Decree and Permanent Injunction. The Court has reviewed and considered, and hereby approves, the stipulated Consent Decree and Permanent Injunction.

The parties have further agreed that upon completion of this litigation and any related litigation, the garments bearing counterfeit UL marks shall be destroyed.

It is hereby **ORDERED** that Defendants, and each of them, are found liable for using in commerce counterfeit UL Marks in connection with the distribution of goods, in violation of 15 U.S.C. § 1114. Defendants stipulate to a judgment in the amount of $120,000, and judgment in that amount shall only be entered in a final judgment in the event that Defendants' default under the terms of the parties' settlement agreement.

It is hereby **ORDERED**, pursuant to Federal Rule of Civil Procedure 65, that Defendants, and each of them, and their respective officers, agents, servants, employees, and attorneys, and all others in active concert or participation therewith, are hereby enjoined and restrained from:

(i) imitating, copying, or making any other infringing use of the UL Marks;

(ii) manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any simulation, reproduction, counterfeit, copy, or colorable imitation of the UL Marks;

(iii) using any false designation of origin or false description or statement that can or is likely to lead the trade or public or individuals erroneously to believe that any good has been provided, produced, distributed, offered for distribution, circulation, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for UL, when such is not true in fact;

(iv) using any reproduction, counterfeit, copy, or colorable imitation of the UL's Marks, including but not limited to its famous certification mark, in connection with the manufacture, importation, sale, offering for sale, or distribution of goods in the United States, which goods in fact are not certified by UL or are not genuine UL certified products, which such use is likely to cause confusion, or to cause mistake, or to deceive;

(v) committing any other acts reasonably calculated to cause users to believe that Zimpex products are authorized or certified by UL, when in fact such products are not

ORDER FOR ENTRY OF CONSENT DECREE AND PERMANENT INJUNCTION

authorized or certified by UL;

(vi) passing off any goods that are not authorized by UL as being certified, approved, or authorized by UL; and

(vii) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above paragraphs (i) through (vi), inclusive.

Nothing in the Order shall prohibit Defendants, or any of their officers, agents, servants, employees, and those persons in active concert or participation with Defendants, from distributing, selling, or offering to sell products bearing genuine UL Marks.

**IT IS FURTHER ORDERED** that UL may perform unannounced inspections, during Defendants' business hours, of Defendants' entire inventory, and to take possession of any and all goods bearing counterfeit or unauthorized imitations of any of the UL Marks. The inspections may be carried out by UL personnel, or by investigators or counsel retained by UL. UL is further granted the right to audit, without advance notice, all of Defendants' purchases of goods that may bear UL marks. Defendants shall maintain in good order all of their records reflecting purchases of all goods that may bear UL marks. Upon an audit being initiated, Defendants shall cooperate with UL by making available for copying and inspection all documents that could reflect suppliers of, purchases of, and/or payments for any goods bearing UL marks. Any documents obtained from Defendants for the purposes of copying shall be returned within two (2) business days, shall be considered confidential and not disclosed by UL to any third party other than law enforcement personnel. Unannounced inspections and audits under this paragraph shall be limited to two (2) per year. UL shall make reasonable efforts not to unnecessarily damage packaging during its inspection. UL's right to inspection and audit under this Paragraph shall expire two (2) years from the date UL receives complete payment under the Settlement Agreement between UL and Defendants.

**IT IS FURTHER ORDERED** that the Court will retain jurisdiction of this action for purposes of enforcement of this Consent Decree and Permanent Injunction, and of the parties' settlement agreement, including the payment terms of the parties' settlement agreement. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court has found that, though more than one

claim for relief exists and multiple parties are involved, there is no just reason to delay entering this Consent Decree and Permanent Injunction against Defendants only.

**SO ORDERED.**

Dated: October 17, 2017

Troy L. Nunley
United States District Judge