# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UL LLC, <br><br> Plaintiff, <br><br> v. <br><br> Sturgeon Services International, Inc., a California corporation, Engineered Well Service International, Inc., a California corporation, John Powell, an individual, and John Does 1-20, individuals, <br><br> Defendants. | Case No.: 1:16−CV−01389−TLN−SAB <br><br> **STIPULATED CONSENT DECREE AND PERMANENT INJUNCTION AS BETWEEN PLAINTIFF UL LLC AND DEFENDANT JOHN E. POWELL, JR.** |
| AND RELATED CROSS-CLAIMS AND THIRD-PARTY CLAIMS | |

CONSENT DECREE AND PERMANENT INJUNCTION

Plaintiff UL LLC ("UL"), and Defendant John E. Powell, Jr. ("Powell"), through their respective counsel of record, have agreed to enter into a stipulated Consent Decree and Permanent Injunction in conjunction with their Settlement Agreement.

This order is made with reference to the following facts, which Powell admits:

(a) UL is the owner of the famous UL-in-a-circle certification mark, and variations thereof, in the United States and abroad, including UL® (stylized) (Reg. No. 782,589), UL® (stylized) (Reg. No. 2,391,140), and UL® (Reg. No. 4,201,014), among other trademark registrations (collectively, the "UL Marks"). The UL Marks are valid, famous, incontestable, and enforceable.

(b) Sturgeon Services International, Inc. ("SSI") and Engineered Well Services International Inc. ("EWS") need flame retardant clothing for their line of work. Beginning in at least 2012, Sturgeon and EWS began investigating purchasing flame retardant clothing from Powell's girlfriend, Rebecca Rynders (aka Rebecca Zhu) and her company Zimpex Inc. (collectively, "Zimpex"). At that time, Powell was CEO of both Sturgeon and EWS and an owner of EWS, and directed Sturgeon and EWS employees to purchase flame retardant clothing from Zimpex, although John Powell knew that Zimpex had never imported or sold flame retardant garments before. Sturgeon, EWS and Powell knew that such clothing needs to comply with NFPA 2112, the safety standard that governs flame retardant uniforms.

(c) In January 2014, a laundry vendor provided a written report pointing out that the garments provided by Zimpex did not comply with NFPA 2112, and were not certified by a testing company, such as UL. The Sturgeon and EWS employees who received the report shared it with Powell, who directed the employees **to** work with Zimpex to correct the deficiencies noted in the report**.**

(d) In or around March of 2014, Zimpex provided Sturgeon and EWS what was claimed to be a certificate proving that the garments were UL-certified. Chad Givens, an employee of Sturgeon and EWS, compared the certificate to the information in UL's online product certification directory, and noticed that the certificate Zimpex had provided

appeared to list an entirely different manufacturer than the one listed in UL's online directory. Chad Givens informed Powell that the UL certificate provided by Zimpex did not match the information on UL's online product certification directory, and that he had doubts about whether the garments had been tested and certified by UL.

(e) In or around March of 2014, Powell directed Sturgeon and EWS to purchase approximately $70,000 worth of Zimpex products. When the products arrived, the products delivered by Zimpex had labels which claimed that the products had been certified by UL as complying with NFPA 2112. The labels, however, had obvious misspellings, such as the phrase "FLAM RETARDANT" instead of "FLAME RETARDANT." The labels also listed "Zimpex Inc." as the manufacturer. EWS distributed these garments to EWS employees. Danielle Broussard, an employee of Sturgeon, noticed that Zimpex was not listed in UL's online certification directory, and promptly brought this to the attention of Powell.

(f) In or around June 2014, while under Powell's leadership, and at Powell's direction, Sturgeon and EWS made another purchase of purported flame resistant garments from Zimpex, totaling over $300,000. In or about November 2014, Sturgeon purchased an additional $30,000 worth of purported flame resistant products from Zimpex. All of these products purchased in 2014 listed "Zimpex Inc". as the manufacturer and had labels which claimed that the products had been certified by UL. Some of the garments purchased from Zimpex were used by Sturgeon's employees.

The parties have entered into a settlement agreement, and as part of that settlement agreement have stipulated to this Consent Decree and Permanent Injunction. The Court has reviewed and considered, and hereby approves, the stipulated Consent Decree and Permanent Injunction.

It is hereby **ORDERED** that Powell is found liable for using in commerce counterfeit UL Marks in connection with the distribution of goods, in violation of 15 U.S.C. § 1114. Powell stipulates to a judgment in the amount of $220,000, and judgment in that amount shall be entered in a final Judgment entered in this action in Plaintiff UL

LLC's favor against Powell. Each side to bear their own costs and fees.

It is hereby **ORDERED**, pursuant to Federal Rule of Civil Procedure 65, that Powell, and his respective agents, employees, and attorneys, and all others in active concert or participation therewith, are hereby enjoined and restrained from:

    (i)    imitating, copying, or making any other infringing use of the UL Marks;

    (ii)    manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any simulation, reproduction, counterfeit, copy, or colorable imitation of the UL Marks;

    (iii)    using any false designation of origin or false description or statement that can or is likely to lead the trade or public or individuals erroneously to believe that any good has been provided, produced, distributed, offered for distribution, circulation, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for UL, when such is not true in fact;

    (iv)    using any reproduction, counterfeit, copy, or colorable imitation of the UL's Marks, including but not limited to its famous certification mark, in connection with the manufacture, importation, sale, offering for sale, or distribution of goods in the United States, which goods in fact are not certified by UL or are not genuine UL certified products, which such use is likely to cause confusion, or to cause mistake, or to deceive;

    (v)    committing any other acts reasonably calculated to cause users to believe that Zimpex products are authorized or certified by UL, when in fact such products are not authorized or certified by UL;

    (vi)    passing off any goods that are not authorized by UL as being certified, approved, or authorized by UL; and

    (vii)    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above paragraphs (i)

3

CHI 67722975v2

through (vi), inclusive.

Nothing in the Order shall prohibit Powell, and his respective agents, employees, and attorneys, and all others in active concert or participation therewith, from distributing, selling, or offering to sell products bearing genuine UL Marks.

**IT IS FURTHER ORDERED** that Powell will not manufacture, import, distribute, sell, offer to sell, or otherwise commercially exploit goods bearing a UL Mark without UL's explicit, written prior approval.

**IT IS FURTHER ORDERED** that the Court will retain jurisdiction of this action for purposes of enforcement of this Consent Decree and Permanent Injunction, and of the parties' settlement agreement, including the payment terms of the parties' settlement agreement. The final judgment ultimately entered in this action for purposes of Rule 58 of the Federal Rules of Civil Procedure shall include a judgment in favor of UL and against Powell on the terms set forth in this Consent Decree and Permanent Injunction.

**SO ORDERED.**

Dated: 2/12/2018

_____
Troy L. Nunley
United States District Judge